# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PATRICK EDWARDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 4910 |
| v. ) | |
| ) | Magistrate Judge Maria Valdez |
| VILLAGE OF PARK FOREST, CHRIS ) | |
| MANNINO, and PAUL SHULMAN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patrick Edwards's complaint alleges unreasonable seizure and excessive force, in violation of 42 U.S.C. § 1983 against defendant police officers Chris Mannino and Paul Shulman and a supplemental state law claim of malicious prosecution against Mannino, Shulman, and the Village of Park Forest. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). This matter is now before the Court on Defendants Village of Park Forest, Chris Mannino, and Paul Shulman's Motion for Partial Summary Judgment [Doc. No. 43]. For the reasons that follow, Defendants' motion is denied.

## FACTS[1]

At all relevant times, defendants Mannino and Shulman were police officers employed by defendant Village of Park Forest, and Plaintiff was a resident of Park Forest. (Defx ¶¶ 3-5.) On

---

[1] Unless otherwise noted, the following material facts are either undisputed or are deemed admitted due to a party's failure to comply with Local Rule 56.1, which this Court strictly enforces.

September 9, 2006, Mannino was dispatched to a call of a possible drug transaction at an address in Park Forest, and he was given information that a white vehicle was involved. (Defx ¶¶ 9, 11.) When Mannino arrived at the address, non-defendant Officer Kessler was already present and was speaking with the occupants of the white vehicle thought to be involved in the alleged drug transaction. (Defx ¶ 12.) Mannino spoke with Kessler, who told Mannino that he had observed Plaintiff speaking with or engaging in some kind of transaction with the occupants of the white vehicle. (Defx ¶¶ 13-14.) Mannino then decided to pat down Plaintiff because the call was for a possible drug transaction; violence is not uncommon in the neighborhood; and he wanted to be sure that Plaintiff did not possess a weapon. (Defx ¶ 18.) Mannino also knew that Plaintiff had a previous arrest for narcotics and for resisting the police, and Mannino had arrested Plaintiff in the past. (Defx ¶¶ 19-20.)

At this point, the parties' versions of events sharply diverge.[2] According to Mannino, he attempted but could not complete a pat-down search because as he approached Plaintiff's left jeans pocket, Plaintiff pushed Mannino's hand away.[3] (Defx ¶¶ 21-22, 37.) Mannino contends that he then told Plaintiff to put his hands behind his back to handcuff him, but Plaintiff pushed away and fled, running almost directly into defendant Shulman, who grabbed Plaintiff and tried to take him into custody. (Defx ¶¶ 23-24, 38.) Defendants claim that Plaintiff began to push off of Shulman and swing his arms wildly in order to break Shulman's grip. (Defx ¶¶ 25, 39-40.) In Plaintiff's

---

[2] The parties do not even agree on the time of the incident. Mannino states he arrived at approximately 11:00 p.m., but Plaintiff says the events occurred at approximately 7:00 p.m. (Defx ¶ 15; Plresp ¶ 15.)

[3] Defendant Shulman arrived at the scene while Mannino was performing the pat-down search. (Defx ¶ 36.)

2

recitation of the facts, he consented to a pat-down search of his clothing, which was completed and recovered nothing. (Plx ¶¶ 1-2.) After the pat-down, Mannino walked away from Plaintiff, and Plaintiff also began to walk away. (Plx ¶¶ 3-4.) Plaintiff avers that he did not push away, attempt to flee, swing his arms, or otherwise resist or initiate any physical contact with the officers at any time during the incident. (Plx ¶¶ 7-9, 11-13.) Plaintiff also disputes that Mannino ever grabbed his wrist or told Plaintiff to place his hands behind his back. (Plx ¶ 10.)

The parties agree, however, that without providing any warning, Mannino then fired his department-issued Taser at Plaintiff from approximately seven feet away, striking him on the left side and causing him to fall to the ground. (Defx ¶¶ 26-27; Plx ¶¶ 5-6.) It is also not disputed that immediately after being tased, Plaintiff was struck on the back of the head with a metal flashlight.[4] (Plx ¶ 14.) But after this brief agreeable interlude, the parties' stories are at odds yet again. Mannino states that, after Plaintiff was incapacitated on the ground, he recovered thirty-five individually wrapped bags of cannibis from Plaintiff's left front pants pocket. (Defx ¶ 28.) Plaintiff disputes this account, testifying that he was not in the possession of cannabis or any other drug and that no such drug was recovered from his person by any police officer. (Plresp ¶ 28.)

Shulman and Mannino placed Plaintiff in handcuffs and charged him with possession of cannabis, battery, and resisting a police officer. (Defx ¶¶ 29,41.) The criminal complaints were all signed by Mannino, who knew that Plaintiff would have to appear in court to defend himself and that he could potentially be sentenced to a term of incarceration; Mannino also acknowledged that in signing the criminal complaints, he wanted Plaintiff to be prosecuted. (Defx ¶¶ 30, 33-34.) None

---

[4] Plaintiff does not know which officer struck him with the flashlight, but he knows it was not done by the first officer on the scene. (Plx ¶ 15.) Plaintiff testified that he did not know what Shulman did during the incident. (Defx ¶ 7.)

of the criminal complaints were signed by Shulman, but he was aware that Plaintiff was being charged with battery to him and that Plaintiff would have to defend himself against the charges that could result in a term of incarceration if convicted. (Defx ¶ 42-43.) The charges against Plaintiff were eventually dismissed with leave to reinstate ("SOL").[5] (Defx ¶ 31.) Mannino stated that the charges were dismissed because he did not appear in court on the day they were heard. (Defx ¶ 32.) Mannino stated that he did not recall why he did not appear in court and that he also did not recall any conversation with any State's Attorney regarding the prosecution of Plaintiff until he made inquiries about the present lawsuit. (Plx ¶ 22.) Plaintiff contends that the charges were dropped when he appeared in court with numerous defense witnesses. (Plx ¶ 16.)

## DISCUSSION

Defendants move for summary judgment on the following counts: (1) Count I, unreasonable seizure, based upon the doctrine of qualified immunity; (2) Count II, excessive force, as to defendant Shulman only; and (3) Count III, a state law claim of malicious prosecution.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[5] An Illinois Appellate Court has strongly criticized the use of SOL dismissals (stricken off, with leave to reinstate), stating that "Cook County prosecutors should rethink their use of the archaic practice of motions SOL" and expressing "our fervent hope that this strange and unnecessary practice will not seep out beyond that county's borders." *People v. Gill*, 886 N.E.2d 1043, 1048 (Ill. App. Ct. 2008).

4

matter of law." Fed. R. Civ. P. 56(c). The Court must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001).

However, once the movant has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The party opposing summary judgment must offer admissible evidence in support of his version of events, and hearsay evidence does not create a genuine issue of material fact. *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir. 1996); *see Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998) ("'If the non-moving party bears the burden of proof on an issue, . . . that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact.'") (citation omitted). "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. . . . The nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citations omitted). "In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Pleniceanu v. Brown Printing Co.*, No. 05 C 5675, 2007 WL 781726, at *7 (N.D. Ill. Mar. 12, 2007) (citing *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 898 (7th Cir. 2003)).

A. **QUALIFIED IMMUNITY**

Defendants first argue that the officers are entitled to qualified immunity on the unreasonable seizure claim because Mannino's seizure of Plaintiff constituted an investigatory

5

stop, and the stop was reasonable under the circumstances. A public official may be shielded from civil liability by qualified immunity "if he can demonstrate that he was performing a discretionary function and that a reasonable law enforcement officer would have believed that, at the time he acted, his actions were within the bounds of the law." *Belcher v. Norton*, 497 F.3d 742, 749 (7th Cir. 2007). "In *Saucier v. Katz*, 533 U.S. 194 (2001), the Court reaffirmed this basic principle and gave additional guidance as to its implementation. 'If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.'" *Belcher*, 497 F.3d at 749.

Qualified immunity claims are analyzed under a two-part analysis articulated in *Saucier*: "The first inquiry requires an examination of the record to determine whether the facts, taken in the light most favorable to the plaintiffs, show that the defendants violated a constitutional right. . . . If such a constitutional violation is established, it then becomes necessary to address whether the constitutional right clearly was established at the time in question.. . . In sum, qualified immunity protects an official from suit and from liability for civil damages when, *at the time of the challenged action*, the contours of the constitutional right were not so defined as to put the official on notice that his conduct violated the Constitution." *Id.* at 749-50 (emphasis in original).

Defendants argue that they are shielded from liability on the unreasonable seizure claim because Mannino's seizure of Edwards constituted an investigatory *Terry* stop rather than a complete arrest. *See Terry v. Ohio*, 392 U.S. 1 (1968). Defendants go to great lengths to explain that Mannino's actions were based upon a reasonable suspicion, as authorized by *Terry*, and that the interference involved in the investigatory stop was not so disproportionate "as to convert the

6

encounter into a full custodial arrest." (Def.'s Mem. in Support of Summ. J. at 6.) But even if Defendants are correct that "Mannino's use of force did not convert this *Terry* stop into an arrest," (Def.'s Reply Mem. at 3), the officers' use of handcuffs and criminal charges against Plaintiff *did* convert the stop into an arrest. Plaintiff contends that his unreasonable seizure claim is not based upon Mannino's *Terry* stop pat-down, but rather on the custodial arrest that followed. Accordingly, Defendants' extensive argument related to the investigatory stop is irrelevant to Plaintiff's claim.

Plaintiff has offered testimonial evidence that the arrest lacked probable cause. He stated that prior to the arrest, he did not resist the officers, he did not flee, and he was not in possession of a controlled substance. Construing the facts in the light most favorable to Plaintiff, a reasonable jury could therefore find that the arrest lacked probable cause. *United States v. Levy*, 990 F.2d 971, 974 (7th Cir. 1993) ("Although probable cause does not require certainty, it does require some probability of criminal activity."). An arrest without probable cause would be a violation of a well-defined constitutional right, and qualified immunity would not attach. *See Belcher*, 497 F.3d at 750 (holding that qualified immunity is not available where a reasonable officer would have known that an arrest lacked probable cause); *see also Levy*, 990 F.2d at 973 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) ("Police officers have probable cause to make an arrest where 'the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'").

Defendants cite to no undisputed facts in the record and make no argument that they had probable cause to arrest Plaintiff or that qualified immunity otherwise shields them from liability

7

on the arrest. *See O'Neill v. O'Callaghan*, No. 01 C 6500, 2002 WL 31133188, at *8 (N.D. Ill. Sept. 25, 2002) ("If the parties were disputing who did what, when, any question of qualified immunity would have to wait until the fact issues were resolved.... Because the facts are in hot dispute, the officers cannot seek pretrial refuge behind a claim of qualified immunity.") (citations and internal quotations omitted). Because there are numerous fact disputes related to the qualified immunity defense, Defendants' motion must be denied as to Count I.

B. **MALICIOUS PROSECUTION**

"To assert a claim for malicious prosecution in Illinois, a plaintiff must establish (1) that the defendant in the malicious prosecution action brought a previous action against him maliciously and without probable cause, (2) that the previous action was terminated in his favor, and (3) that he suffered some 'special injury' or damage beyond the usual expense, time, or annoyance attributable to defending a lawsuit." *Velez v. Avis Rent A Car Sys., Inc.*, 721 N.E.2d 652, 654 (Ill. App. Ct. 1999); *see Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996) (holding that the absence of any one of the elements bars a malicious prosecution claim). Defendants assert that the malicious prosecution claim must be dismissed because: (1) Plaintiff cannot demonstrate that the underlying criminal proceeding was terminated in his favor; and (2) Plaintiff has not shown that Defendants' actions were motivated by malice.

First, Plaintiff must demonstrate that underlying proceedings were terminated in a manner indicative of his innocence. *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996) ("The circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution."). In determining whether a disposition was a "favorable termination" of the proceedings, courts

must look "at the circumstances, not the form or title, under which the disposition is obtained." *O'Neill v. O'Callaghan*, No. 01 C 6500, 2002 WL 31133188, at *8 (N.D. Ill. Sept. 25, 2002) (citing *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1352-53 (Ill. 1997)); *see Velez v. Avis Rent A Car Sys., Inc.*, 721 N.E.2d 652, 656 (Ill. App. Ct. 1999) ("Where the disposition is indicative of a lack of probable cause to bring the earlier case, it will constitute a 'favorable termination' for purposes of asserting a malicious prosecution claim."). The Plaintiff bears the burden of proving that his criminal case was terminated for reasons consistent with his innocence. *Swick*, 662 N.E.2d at 1243.

In *Velez*, the court found allegations indicative of the plaintiff's innocence following an SOL motion where the defendant had the opportunity to prosecute the case but twice refused to proceed to trial, stating: "Nothing in the plaintiff's complaint indicates that the abandonment of the prosecution was the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or improbability of bringing the accused to trial." *Velez*, 721 N.E.2d at 656 (citing *Swick*, 662 N.E.2d at 1243); *cf. O'Neill*, 2002 WL 31133188, at *9 (finding no indication of innocence where defendant officers were not complaining witnesses and were not required to appear in court for plaintiffs to be prosecuted).

Plaintiff argues that there was a favorable termination of the underlying criminal case because the case was dismissed SOL after he appeared in court with a number of witnesses to defend him. Defendants argue that the criminal case against Plaintiff was not adjudicated in his favor because the SOL was the result of the officers' "inadvertent failure to appear [in] court due

9

to scheduling issues." (Def.'s Mem. at 9.) First, Defendants fail to cite to any facts in the record supporting their statement of the reasons for the officers' failure to appear. Indeed, Mannino testified that he did not know why he did not appear. Second, even assuming Defendants' version of the facts is true, nothing in the record prevents an inference that the SOL was based upon the merits of the underlying case, rather than the officers' non-appearance. In any event, a reasonable jury could infer that the lack of probable cause was itself the reason for the officers' failure to appear. Furthermore, there is no evidence that the dismissal was based on any of the factors articulated in *Velez* and *Swick*. It is for the trier of fact to determine whether the SOL represented a termination in Plaintiff's favor. *See Swick*, 662 N.E.2d at 1243 (allowing the plaintiff the opportunity on remand to prove that a *nolle prosequi* dismissal order was entered in a manner indicative of innocence).

Second, Defendants argue that although they intended for Plaintiff to be prosecuted for the charges brought against him, and they knew Plaintiff would have to defend himself against those charges, those factors are not sufficient to show that either Mannino or Shulman "harbored actual malice towards this Plaintiff." (Defs.' Mem. at 10.) Defendants submit that, if that were a sufficient showing, then "a malicious prosecution claim would arise from every instance where criminal charges did not result in a conviction." (*Id.*)

Contrary to Defendants' argument, "[m]alice, as an element of malicious prosecution, does not necessarily mean personal ill-will, spite or hatred toward the person prosecuted, but is proved by showing that the prosecutor was actuated by improper motives." *Turner v. City of Chi.*, 415 N.E.2d 481, 487 (Ill. App. Ct. 1980). "'In order to create a question for the trier of fact, it is not incumbent upon the plaintiff to present direct affirmative evidence of lack of good

10

faith on the part of the defendant.'" *Fabiano v. City of Palos Hills*, 784 N.E.2d 258, 274 (Ill. App. Ct. 2002) (citation omitted). A jury may infer malice from a lack of probable cause. *Id.*; *see also Turner*, 415 N.E.2d at 487 (holding that "malice may not be inferred where probable cause exists"). In this case, viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that no probable cause existed for the arrest and prosecution and therefore infer of the element of malice. *See Fabiano*, 784 N.E.2d at 274 (holding that where the evidence may lead to an inference of either good faith or malicious actions, it is an issue for the trier of fact). Therefore, summary judgment must be denied as to the malicious prosecution claim.

C. **EXCESSIVE FORCE (DEFENDANT SHULMAN)**

Finally, Defendants argue that the excessive force claim must be dismissed as to Defendant Shulman because Plaintiff testified that he did not know Shulman's role with respect to the incident. Defendants state that there is no testimony from any independent witnesses that Shulman used any force, excessive or otherwise, against Plaintiff. Plaintiff responds that he could not see who hit him, as he was allegedly struck in the back of the head, but that he knew it was not the first officer on the scene (*i.e.*, Kessler), and a jury could infer that it was also not Mannino, who was several feet away, having just fired a Taser at Plaintiff. Giving Plaintiff the benefit of all inferences in his favor, as this Court must, a reasonable jury could find that he was struck in the head, and that the officer who struck him was Shulman.

## **CONCLUSION**

For the foregoing reasons, Defendants Village of Park Forest, Chris Mannino, and Paul Shulman's Motion for Partial Summary Judgment [Doc. No. 43] is denied.

**SO ORDERED.**  **ENTERED:**

**DATE: August 20, 2009**  *[signature: Maria Valdez]*

**HON. MARIA VALDEZ**
**United States Magistrate Judge**